UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DEONTAE GORDON #308075,

        Plaintiff,             Case No. 2:10-cv-120

v.                                 Honorable R. Allan Edgar

LINDA TRIBLEY, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants . The Court will serve the complaint against Defendants Hill, Tyree, Coodere, Morin, Haataja, Chosa, Wise, MacBride, Burke, McClellan, and Elderman.

**Discussion**

I.       Factual allegations

Plaintiff Deontae Gordon #308075, an inmate at the Oaks Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Deputy Warden Linda Tribley, Health Unit Manager Gloria Hill, Physician's Assistant Howard Tyree, Kenneth Coodere R.N., Anne Morin R.N., Janet Haataja R.N., Clara Chosa R.N., Zita Wise R.N., Management Coordinator Nancy Martin, Deputy Director Dennis Straub, "BCHS Quality Assurance Office," Linda Zeller, Dr. Unknown Macbride, Resident Unit Officer Unknown Burke, Sergeant Unknown McClellan, and Dr. Unknown Elderman.

In his complaint, Plaintiff alleges that on February 28, 2008, Defendant Coodere failed to process a health care kite for Plaintiff. On March 4, 2008, Plaintiff asked Defendant Coodere why he had not processed the kite, and Defendant Coodere stated that he was not in charge of processing kites. Plaintiff filed a grievance, which was responded to by Defendant Morin, who refused to properly investigate or to schedule Plaintiff to see health services. On March 17, 2008, Plaintiff again kited health services, complaining of pain and a lump in one of his testicles. Plaintiff was seen by a nurse on March 19, 2008, who noted that Plaintiff had a nodule in one testicle and had lost 9 pounds since his last visit. On March 24, 2008, Plaintiff was assessed by Physician's Assistant (PA) Miller, who requested that Plaintiff have an ultrasound to check for testicular cancer. Plaintiff received an ultrasound on April 8, 2008, which revealed that Plaintiff had an epididymal cyst on the right side, with possible epididymitis.

Plaintiff states that epididymitis can cause severe pain, swelling of the scrotum, fever, discharge from the penis, and painful urination and ejaculation. Plaintiff was prescribed the

antibiotic Doxycycline. On April 28, 2008, Plaintiff became very dizzy and nauseated, and developed severe headaches. It was later determined that Plaintiff had an allergic reaction to the antibiotic. On May 15, 2008, Plaintiff was seen by health care because of the continuing lump in his testicle and because he was still suffering from severe intermittent pain, as well as dizziness and a weight loss of approximately 20 pounds. Plaintiff was prescribed the antibiotic Augmentin. On June 7, 2008, Plaintiff kited health services because the lump in his testicle had tripled in size. Plaintiff was also experiencing pain and ringing in his ears, which was later determined to be the result of an allergic reaction to medication. Physician's Assistant Miller requested a consult with a urologist, which was denied.

On August 5, 2008, Plaintiff had a blood draw, and was told to re-kite regarding his symptoms. On August 13, 2008, Defendant Chosa returned a kite to Plaintiff, stating that his blood work was normal. Plaintiff claims that it was later revealed that his white blood cell (WBC) count was actually low, which could indicate several serious illnesses. On August 15, 2008, Plaintiff kited, stating that his pain was getting worse. On August 18, 2008, Plaintiff was informed that Miller had successfully appealed the denial of the request for a consult, and that Plaintiff had been scheduled to see a urologist. On September 4, 2008, Plaintiff was seen by Dr. Andrew E. Johoda, M.D., who told Plaintiff that his epididymitis was not due to a bacterial infection and that the only available treatment was surgery. Upon returning to the Baraga Maximum Correctional Facility (AMF) after his appointment, Plaintiff informed prison staff that he wished to have the surgery. Plaintiff was told to contact Dr. Johoda.

On September 22, 2008, Plaintiff sent a letter to Dr. Johoda, informing him that Plaintiff had developed a cyst on his left testicle, and that he was experiencing burning in his penis

and post-void leakage of urine. Dr. Johoda responded that the post-void leakage was probably due to an enlarged prostate. Plaintiff states that staff at AMF took no action regarding this information, but that 10 months later, Plaintiff was diagnosed with Prostatitis. On approximately September 19, 2008, Physician's Assistant Miller requested that Plaintiff have reconstructive surgery because he met the criteria set forth in Policy Directive 03.04.100, ¶ SS. This request was denied on October 1, 2008, by Regional Medical Office employee Dr. Squier, who ordered that Plaintiff have another ultrasound which showed the epididymal cords as a prerequisite to approval. Plaintiff states that this test was not conducted until over 4 months later.

On October 16, 2008, Plaintiff kited health services stating that his condition had worsened and that he had developed another large cyst on his left testicle. Defendant Haataja responded by stating that Plaintiff was scheduled for medical callout on October 22, 2008. On October 29, 2008, Plaintiff mailed a letter to Warden Capello and Defendant Tribley, asking for assistance in obtaining medical care, to no avail. On October 31, 2008, Plaintiff still had not been called out to health services, so he sent another kite. On November 5, 2008, Defendant Chosa fabricated a response, stating that Plaintiff's kite was not received until that day. On November 12, 2008, Plaintiff was finally called to health services and was given a "supervised urine dipstick test," which showed blood in Plaintiff' urine. This test was administered by Defendant Wise, who informed Plaintiff of the results, but falsely documented that Plaintiff's urine was "negative" for blood. Plaintiff was not given any treatment or pain medication.

On November 17, 2008, Plaintiff was called out by Defendant Tyree, who refused to place a consultation request for Plaintiff to have an ultrasound. In addition, Defendant Tyree placed Plaintiff on an antibiotic that he had previously taken and which had been ineffective. Plaintiff

alleges that this sparked a debate between himself and Defendant Tyree, and Defendant Tyree ordered him to leave health services. However, before Plaintiff left the office, he informed Defendant Tyree of Defendant Wise's finding of blood in Plaintiff's urine. Defendant Tyree told Plaintiff that Defendant Wise had documented that Plaintiff's urine was negative for traces of blood. On November 17, 2008, Defendant Tyree filed a report regarding the visit, falsely stating that Plaintiff's testicular problems had existed for two years and that Plaintiff had refused antibiotic treatment. Plaintiff kited Defendant Wise, who responded that the results of Plaintiff's urine test accurately stated that there was a "trace" of blood in the urine.

On November 21, 2008, Plaintiff had a blood draw which revealed a very low white blood cell count. Plaintiff was not notified of this result until months later, nor were any actions taken to address this condition. On November 22, 2008, Plaintiff filed grievances against Defendant Tyree. On November 27, 2008, Plaintiff filed a medical kite requesting medication for pain in his testicles. On November 28, 2008, Plaintiff was called to health services for another blood draw, but Defendant Tyree refused to provide any treatment for Plaintiff's testicle cysts and pain. On December 8, 2008, doxycycline was prescribed for Plaintiff, despite the fact that it had previously been ineffective. On December 30, 2008, Plaintiff began to experience an allergic reaction to the doxycycline, which included dizziness, lightheadedness, and pain and ringing in his ears. On January 6, 2009, Defendant Tyree noted that Plaintiff was neutropenic, and that the condition had worsened after chronic doxycycline use. Defendant Tyree further noted that neutropenia was an indication of doxycycline hypersensitivity. Plaintiff was finally notified about his blood count on January 16, 2009, but was given no treatment for this condition.

On January 21, 2009, Plaintiff kited health care for "blood and pus . . . oozing out of his ear," as well as pain, dizziness, and lightheadedness. On January 23, 2009, Plaintiff was seen by Defendant Chosa, who noted dime sized masses on both testicles. On January 28, 2009, Plaintiff's blood was redrawn, but Plaintiff was not allowed to address his concerns regarding the lumps on his testicles. Plaintiff wrote a letter of complaint to Defendant Hill. On January 31, 2009, lab results revealed that Plaintiff had the "Epstein Barr Infection," although Plaintiff was not notified of this until late February. On February 2, 2009, Plaintiff lost consciousness and collapsed on a prison walkway. Plaintiff was taken to health services, where Defendant Morin documented that Plaintiff had fallen. On February 3, 2009, Defendant Tyree falsely documented that Plaintiff did not remember what happened and that it was unclear whether Plaintiff had actually lost consciousness.

On February 17, 2009, Defendant Tyree falsely documented that he had a 90 minute talk with Plaintiff regarding his condition. On February 19, 2009, four months after Dr. Squier's instructions that Plaintiff have a second ultrasound, Defendant Tyree finally placed a consultation request for Plaintiff to have the test. On February 20, 2009, Defendant Morin sent a kite response which falsely stated that Plaintiff's blood tests were normal. On February 24, 2009, the request for an ultrasound was denied by Defendant MacBride. On February 26, 2009, Plaintiff kited for pain medication, but was told that Defendant Tyree had not ordered such medication.

On March 6, 2009, Plaintiff kited health services to complain of intense intermittent pain in his testicles, an enlargement of his cyst, and a burning sensation. Plaintiff was told that he would be seen in health services on March 13, 2009, but was not seen for his complaint until April 6, 2009. On March 17, 2009, Plaintiff told Defendant Burke that he was suffering excruciating pain and stated that health services was refusing to process his kites. Defendant Burke refused to contact

health services and later stated that Defendant McClellan said that Plaintiff's complaint was not a medical emergency. On March 19, 2009, Plaintiff wrote a letter to Defendant Tribley, to no avail.

On March 24, 2009, Plaintiff was sent to health services for flu like symptoms. Plaintiff was examined by Defendant Coodere, who refused to listen to Plaintiff's complaint of testicle pain. Defendant Coodere told Plaintiff to kite if he wanted to be seen for anything other than the flu. Plaintiff stated that his kites were not being processed and that he had been waiting to be seen since March 6, 2009. On March 26, 2009, Plaintiff filled out a health care kite and attached it to a letter to Defendant Tribley, asking her to have it processed. On March 29, 2009, Plaintiff filed a grievance against Defendant Coodere for the incident which occurred on March 24, 2009, and on April 2, 2009, Plaintiff filed a grievance on Defendant Tribley. On April 3, 2009, Plaintiff was told to report to health services. Plaintiff was seen by Defendant Hill, who told him that he was the wrong "Gordon" and instructed him to leave. Plaintiff stated that as long as he was at health services, maybe they could resolve the issue of his kites not being processed. Defendant Hill refused, stating that he would never be treated by health services and that she could put whatever she wanted in Plaintiff's file. Plaintiff filed a grievance on Defendant Hill.

On April 6, 2009, Plaintiff was finally called to health services, during which the doctor ordered an ultrasound. Plaintiff did not receive any pain medication. Plaintiff states that after his appointment, Defendant Hill falsely documented that Plaintiff had refused to be seen and had walked out of the clinic area. On the same day, the "American Friends Service Committee" contacted the MDOC by email regarding Plaintiff's health, notifying the MDOC that Plaintiff was experiencing pain in his testicles and lower abdomen. On April 14, 2009, Plaintiff requested health care for intense intermittent pain in his testicles, as well as for the growing cysts. On May 6, 2009,

Plaintiff was called to health services by Nurse Cindy L. Anderson, and was given a supervised urine test, which revealed that he was urinating blood. On May 13, 2009, Plaintiff received an "itinerary" to see the doctor, but was never called out to health services. On May 21, 2009, Plaintiff was sent to the Baraga County Memorial Hospital for an ultrasound, which revealed a prominent 8 mm cyst, which was unchanged from earlier tests. The ultrasound showed that Plaintiff's testicles were otherwise normal.

On May 29, 2009, Plaintiff gave a health care request kite directly to Defendant Coodere, complaint of pain and requesting to be called out. Plaintiff states that this kite was never processed. On June 9, 2009, Plaintiff was seen by Dr.. Marianne A. Post, who noted that Plaintiff had an epidiymal cyst, hematuria, pain, and penile discharge. Dr. Post requested that Plaintiff be seen by a urologist within 7 days, and listed the referral type as "urgent." On June 12, 2009, the request was denied by Defendant Elderman. On July 2, 2009, Plaintiff kited for health care, and was placed on the waiting list. On July 15, 2009, after purchasing copies of his medical files, he learned that Defendant Haataja had falsely stated that Plaintiff was masturbating while attempting to obtain a urine sample. On July 23, 2009, Plaintiff was examined by Dr. Post, who noted that the right cyst seemed larger than the previous visit and that Plaintiff's prostate was enlarged and very tender on palpation and "boggy." Dr. Post diagnosed Plaintiff with "prostatitis" and "painful epididymal cysts." On July 27, 2009, the American Friends Service Committee emailed Defendants Martin, Straub, Zeller, and the Quality Assurance Office regarding Plaintiff's situation. On August 20, 2009, Plaintiff kited informing health services that he again was experiencing signs of allergic reaction to the antibiotic he had been taking. On September 2, 2009, Plaintiff was transferred to another facility.

Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

II. Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants personally involved in the activity which forms the basis of his claim. The only roles that Defendants Tribley, Martin, Straub, Zeller, and "BCHS Quality Assurance Office" had in this action involve the denial of administrative

grievances or the failure to act.  Defendants Tribley, Martin, Straub, Zeller, and "BCHS Quality Assurance Office" cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the Court concludes that Plaintiff's claims against Defendants Tribley, Martin, Straub, Zeller, and "BCHS Quality Assurance Office" are properly dismissed for lack of personal involvement.

The court concludes that Plaintiff's claims against Defendants Hill, Tyree, Coodere, Morin, Haataja, Chosa, Wise, MacBride, Burke, McClellan, and Elderman are not clearly frivolous and may not be dismissed upon initial review.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Tribley, Martin, Straub, Zeller, and "BCHS Quality Assurance Office" will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Hill, Tyree, Coodere, Morin, Haataja, Chosa, Wise, MacBride, Burke, McClellan, and Elderman.

An Order consistent with this Opinion will be entered.

Dated:     12/16/2010              */s/ R. Allan Edgar*
                                   R. Allan Edgar
                                   United States District Judge